F&B MANUFACTURING COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Martha Quintero, Appellee).

First District (Industrial Commission Division)    No. 1—00—2931WC

Opinion filed September 20, 2001.

528

Richard Sawishlak, of Garofalo, Schreiber & Hart, Chtrd., of Chicago, for appellant.

No brief filed for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Respondent F&B Manufacturing Company appeals from an order of the circuit court of Cook County confirming a decision of the Illinois Industrial Commission (Commission) entered following an earlier remand by the circuit court. The claimant in this case is Martha Quintero.

On August 23, 1990, claimant filed an application for adjustment of claim alleging a back injury on July 23, 1990. Following a hearing conducted on March 26, April 23, and May 24, 1996, the arbitrator entered a decision on June 22, 1996, awarding claimant $158.67 per week for 31 weeks for temporary total disability (TTD) and $142.81 per week for 25 weeks for permanent partial disability (PPD) to the extent of 5% of the person as a whole. 820 ILCS 305/8(b), (d)(2) (West 1996). The arbitrator specifically found that (1) claimant was entitled to TTD from July 24 to August 20, 1990, and from August 22, 1990, to February 26, 1991; (2) claimant was not entitled to receive payment for medical expenses relating to care provided by medical service providers beyond the two chains of referral from claimant's two chosen medical service providers, being Treister Orthopaedic Services, Ltd. (Treister Orthopaedic), and Cragin Health Center (Cragin) (820 ILCS 305/8(a)(2), (a)(3) (West 1996)); and (3) the chiropractic care provided by Cragin and the neurological examination by Dr. Aleksandra Stobnicki, to whom claimant was referred by one of the chiropractors at Cragin, were not reasonable and necessary because the services were duplicative of the treatment provided by Treister Orthopaedic. The Commission affirmed and adopted the arbitrator's findings in a decision entered April 18, 1997.

On judicial review (Cook County case No. 97—L—50541), the circuit court affirmed the PPD award, but set aside the findings of duration of TTD and the denial of medical expenses, and remanded to the Commission "for further proceedings" in an order entered by Judge Quinn on March 18, 1998.

On remand, without any additional evidence, and with one commissioner dissenting, the Commission adopted the earlier PPD award and awarded claimant TTD for 61$^1$/$_7$ weeks from July 24 through August 20, 1990, and from August 22, 1990, through September 30, 1991, and $6,864 in medical expenses, including $2,295 for services rendered by Cragin and $275 for the services of Stobnicki. The dissenting commissioner strongly protested that the circuit court had done nothing more than substitute its judgment for that of the Commission. The Commission decision on remand was entered on July 13, 1999.

Thereafter, respondent sought judicial review in the circuit court (Cook County case No. 99—L—50809, consolidated with No. 97—L—50541). Claimant appeared *pro se* in the circuit court. In the second judicial review, Judge White presided. On July 25, 2000, the circuit court determined that the March 18, 1998, order entered by the circuit court in case No. 97—L—50541 was a final order for purposes of appeal and confirmed the July 13, 1999, decision of the Commission following remand. The appeal to this court followed.

The issues raised by respondent all relate to the propriety of the Commission's original decision of April 18, 1997. The respondent asks this court to determine whether the following Commission findings were against the manifest weight of the evidence: (1) that claimant was not entitled to TTD benefits beyond February 26, 1991; (2) that Cragin was the second medical provider chosen by claimant; and (3) the charges for services rendered by Cragin and Stobnicki were not proved to be reasonable and necessary.

■ Claimant has not filed an appellee's brief. Because the record in this case is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief, we decline to summarily reverse the circuit court decision. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133, 345 N.E.2d 493, 495 (1976). We now reverse in part and affirm in part the order of the circuit court entered July 25, 2000; reverse the order of the circuit court entered March 18, 1998; vacate the decision of the Commission entered July 13, 1999; and reinstate the April 18, 1997, Commission decision as modified. We first address whether the March 18, 1998, order of the circuit court was a final order for purposes of appeal. The standard for determining finality set forth in *Wilkey v. Illinois Racing Board*, 96 Ill. 2d 245, 249-50, 449 N.E.2d 843, 844-45 (1983), applies in administrative review contexts.

In *Stockton v. Industrial Comm'n*, 69 Ill. 2d 120, 124-25, 370 N.E.2d 548, 550 (1977), the Supreme Court of Illinois held that a circuit court order reversing and remanding a Commission decision is

nonfinal if it allows the Commission to find the claimant entitled to additional TTD for time not yet considered. The circuit court order in *Stockton* did not limit the Commission's consideration of additional TTD, medical expenses, and the extent of permanent disability. Here, the circuit court's order reversing and remanding the original decision of the Commission found that claimant was entitled to TTD "at least" through September 30, 1991. The Commission could find claimant entitled to TTD beyond that date. In addition, the Commission had not yet determined the reasonableness and necessity of medical expenses incurred by claimant as a result of services rendered by medical service providers that were not within the chain of referrals from

Treister and Cragin. The Commission's task was more than simply ministerial. The March 18, 1998, order was nonfinal, and this court is authorized to review the entire record and determine the propriety of the Commission's original decision and the circuit court's reversal thereof. *Stockton*, 69 Ill. 2d at 126, 370 N.E.2d at 550-51.

■ When a Commission decision is reversed because it is contrary to law and on remand the Commission properly applies the law, the Commission decision following remand is given deference over the initial Commission decision. *Freeman United Coal Mining Co. v. Industrial Comm'n*, 188 Ill. 2d 243, 248, 720 N.E.2d 1063, 1067 (1999). However, the Commission decision may also be reversed because the factual findings are against the manifest weight of the evidence. *Freeman United Coal Mining*, 188 Ill. 2d at 245, 720 N.E.2d at 1065. In this case, the circuit court did not find that the original decision of the Commission was contrary to law. Instead, the reversal was based on the determination that the Commission's factual findings were against the manifest weight of the evidence. When the original Commission decision is reversed because it is against the manifest weight of the evidence, this court initially considers the propriety of the original Commission decision before reviewing the Commission decision entered following remand.

■ On the merits, we initially address the issue relating to the duration of TTD. The time during which a claimant is temporarily totally disabled is a question of fact for the Commission; the duration of TTD is controlled by claimant's ability to work and her continuation in the healing process; and to be entitled to TTD, claimant must prove not only that she did not work, but that she was unable to work. *City of Granite City v. Industrial Comm'n*, 279 Ill. App. 3d 1087, 1090, 666 N.E.2d 827, 828-29 (1996). The dispositive test is whether the condition has stabilized, because a claimant is entitled to TTD when a " 'disabling condition is temporary and has not reached a permanent condition.' " *Manis v. Industrial Comm'n*, 230 Ill. App. 3d 657, 660,

595 N.E.2d 158, 160-61 (1992), quoting Ill. Rev. Stat. 1987, ch. 48, par. 138.19(b) (now 820 ILCS 305/19(b) (West 2000)). In determining whether a factual finding of the Commission is against the manifest weight of the evidence, the test is whether the record contains sufficient factual evidence to support the Commission's determination. *Beattie v. Industrial Comm'n*, 276 Ill. App. 3d 446, 450, 657 N.E.2d 1196, 1199 (1995).

On November 27, 1990, Dr. Chang Sun Kim, a physician with Treister Orthopaedic, found nothing objectively wrong with claimant and recommended that she see a psychiatrist. Dr. Michael Treister discharged claimant on February 26, 1991. When claimant was seen by Dr. Charles Mercier, respondent's examining physician, on April 25, 1991, claimant was not then treating with any physician. Mercier found claimant able to return to unrestricted work. Dr. Marc Levin, a treating neurologist, was of the opinion that claimant was not able to work when he saw her on September 30, 1991.

As stated heretofore, the arbitrator's award extended for 31 weeks to February 26, 1991. The circuit court, in its remand order, found that TTD should extend at least to September 30, 1991, basing its decision upon the testimony of Levin. The contested period of TTD, $31^{1}/_{7}$ weeks, is February 26, 1991, to September 30, 1994.

■ The Commission was not obligated to place greater weight on the opinion of Levin than on the opinions of Treister or Mercier. See *Prairie Farms Dairy v. Industrial Comm'n*, 279 Ill. App. 3d 546, 550-51, 664 N.E.2d 1150, 1152-53 (1996). The Commission found that the claimant's current condition of ill-being was not causally connected to the accidental injury and that the finding of the Commission has never been contested or overturned. In addition, Levin's original diagnosis of a herniated disc at L5 was changed after the results of a myelogram, computerized tomography (CT) scan, and a bone scan were all normal. Levin changed the diagnosis to radiculopathy or sciatica. Treister, who had treated claimant earlier and for a longer period of time, released her to return to work on February 26, 1991. The Commission's finding that claimant was entitled to TTD only until February 26, 1991, was not against the manifest weight of the evidence.

■ As to the medical expenses, section 8(a) of the Workers' Compensation Act (Act) (820 ILCS 305/8(a) (West 2000)) makes an employer liable for necessary and reasonable medical, surgical, and hospital expenses required to cure or relieve the effects of the accidental injury. The employer is liable for services provided by the physician, surgeon, or hospital initially chosen by claimant or those to whom she was referred by the initial provider, and all such services provided by a second physician, surgeon, or hospital subsequently

chosen by the claimant or any provider to whom she was referred by the second service provider. 820 ILCS 305/8(a)(2), (a)(3) (West 2000).

■ Claimant was initially treated at St. Therese Hospital on an emergency basis on July 23, 1990. She followed up at St. Therese on July 26, July 30, August 3, and August 8, 1990. The patient instruction sheet she received on August 8, 1990, instructed her to "Follow up with Dr. Rowley by Friday or Dr. of choice." The "treatment" section of the August 8, 1990, medical report in the records for St. Therese Medical Center indicated claimant was to see "neurologist of choice or Dr. Rowley." Claimant testified she chose to see her family physician Dr. Rojas, who referred her to Treister. This was her first choice within the meaning of section 8(a) of the Act. There was no evidence that respondent designated what physician claimant was allowed to see. At Treister Orthopaedic, claimant was seen by Treister and Kim. Kim referred her to Dr. Rafael Carreira, a psychiatrist. Those were within the chain of referrals of the initial provider chosen by claimant. 820 ILCS 305/8(a)(2) (West 2000); see also *Pluto v. Industrial Comm'n*, 272 Ill. App. 3d 722, 724, 729, 650 N.E.2d 631, 633, 636 (1995). As a result, Cragin was the second provider chosen by claimant, and subject to the requirement that the expenses be reasonable and necessary, respondent would be required to compensate claimant for the fees incurred as a result of the care provided by Cragin and Stobnicki, to whom claimant was referred by Dr. Coral Beth Youker, a chiropractor at Cragin. 820 ILCS 305/8(a)(3) (West 2000).

On May 30, 1991, claimant saw Dr. Robert Garcia at the suggestion of a friend of her husband. In July 1991, Garcia ordered an electromyography and a magnetic resonance imaging scan to be performed at the Norwegian American Hospital. Garcia referred claimant to Levin, who ordered the myelogram, CT scan, and bone scan at St. Margaret's Hospital and later referred claimant back to Garcia. In January 1992, on the recommendation of her husband, claimant saw Dr. Carlos Boileve, a chiropractor. Boileve referred claimant to Drs. Jacob Michael Morganstern, Ralph V. Cabin, and Edward Goldberg. Boileve also referred claimant to another chiropractor identified in the record as Dr. Guzman. As a result of the referrals to these doctors, claimant also received further treatment at Our Lady of Resurrection Hospital. These two chains of providers beginning with Garcia and Boileve are beyond the two-choice chains of referral allowed under section 8(a) of the Act, as are the medical services provided to claimant thereafter.

The final issue is whether the Commission's original determination that the $2,295 fee incurred for services at Cragin and the $275 fee for the services of Stobnicki were not recoverable because the ser-

vices were not reasonable and necessary. Claimant was first seen at Cragin on August 23, 1990, for chiropractic care. She simultaneously received physical therapy and orthopaedic services from Treister Orthopaedic. Youker, one of the chiropractors at Cragin, referred claimant to Stobnicki for a neurological consultation. Stobnicki reported the results of the examination to Youker, did not refer claimant for any other services or make any other recommendations, and claimant continued to receive chiropractic care from Cragin until January 15, 1991.

■ Under section 8(a) of the Act, the claimant is entitled to recover reasonable medical expenses that are causally related to the accident and that are determined to be required to diagnose, relieve, or cure the effects of claimant's injury. *University of Illinois v. Industrial Comm'n*, 232 Ill. App. 3d 154, 164, 596 N.E.2d 823, 830 (1992). Claimant has the burden of proving that the medical services were necessary and the expenses were reasonable. See *Gallentine v. Industrial Comm'n*, 201 Ill. App. 3d 880, 888, 559 N.E.2d 526, 532 (1990). What is reasonable and necessary is a question of fact for the Commission, and the Commission's determination will not be overturned unless it is against the manifest weight of the evidence. *Cole v. Byrd*, 167 Ill. 2d 128, 136-37, 656 N.E.2d 1068, 1072 (1995); *University of Illinois*, 232 Ill. App. 3d at 164, 596 N.E.2d at 830.

■ In its original decision in this case, the Commission found that the claimant failed to prove that the chiropractic care provided by Cragin and the referral to Stobnicki were not duplicative of the treatment provided to her by Treister and his staff. This finding is against the manifest weight of the evidence.

Stobnicki was a neurologist who performed a neurological examination on referral from one of the chiropractors at Cragin. In light of the recommendation of the emergency room staff at St. Therese Hospital and Medical Center that claimant see a neurologist, the Commission finding that Stobnicki's examination of claimant was unnecessary is against the manifest weight of the evidence. In addition, there is no evidence in this record that the chiropractic treatment at Cragin is duplicative of the physical therapy provided at Treister. If a claimant is dissatisfied with the results of the treatment by one provider, the claimant may seek a second treatment option that claimant believes may provide greater relief. Claimant could certainly obtain a second opinion about the appropriateness of the treatment she was receiving. There were no doctors that told claimant that chiropractic treatment would not likely help her condition.

In its first decision, the Commission, in adopting the arbitrator's award, found that Cragin and Stobnicki were claimant's second choice

of doctors and found the subsequent medical services were beyond the two choices allowed but then denied the expenses of Cragin and Stobnicki as unreasonable and unnecessary. We decline to use the reasonable and necessary rationale to eliminate a claimant's statutorily authorized second choice of service provider. When a claimant incurs unnecessary and unreasonable medical services, that is not a "choice" under the statute, and the claimant retains any unused statutory options.

As a result, the order of the circuit court of Cook County entered on March 18, 1998, is reversed in part and affirmed in part; the order of the circuit court entered July 25, 2000, is reversed; the Commission decision entered following remand on July 13, 1999, is vacated; and the original Commission decision entered April 18, 1997, is reinstated as modified to allow claimant to recover the medical expenses incurred for the services of Cragin and Stobnicki.

Circuit court order of March 18, 1998, reversed in part and affirmed in part; circuit court order of July 25, 2000, reversed; Commission decision on remand vacated; original Commission decision reinstated as modified.

Affirmed in part, reversed in part, and vacated in part; original Commission decision reinstated as modified.

HOFFMAN, O'MALLEY, HOLDRIDGE, and RARICK, JJ., concur.